1  | Eric M. Schiffer (SBN 179695)
2  | William L. Buus (SBN 180059)
   | SCHIFFER & BUUS, APC
3  | 4675 MacArthur Court, Suite 590
   | Newport Beach, California 92660
   | Telephone:  (949)825-6140
4  | Facsimile:  (949)825-6141
   | Email:      eschiffer@schifferbuus.com
5  |             wbuus@schifferbuus.com

6  | Attorneys for Plaintiff,
   | JOHN DOE
7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                          WESTERN DIVISION

11 | JOHN DOE, an individual           ) Case No. SACV11-00389 AG (MLGx)
                                       )
12 |              Plaintiff,           ) COMPLAINT FOR:
                                       )
13 |       vs.                         )   1) Appropriation of Likeness;
                                       )   2) Public Disclosure of Private
14 | GANGLAND PRODUCTIONS, INC.,       )      Information;
   | an Illinois Corporation;          )   3) Breach of Contract;
15 | A&E TELEVISION NETWORKS,          )   4) False Promise;
   | LLC, a Delaware Corporation, and  )   5) Negligent Infliction of Emotional
16 | ROES 1-10, inclusive,             )      Distress; and
                                       )   6) Intentional Infliction of
17 |              Defendants.          )      Emotional Distress
                                       )
18 |_____)  DEMAND FOR JURY TRIAL

19         Plaintiff JOHN DOE ("Plaintiff") hereby alleges against Defendants

20  GANGLAND PRODUCTIONS, INC. ("GPI"), an Illinois corporation, and A&E

21  TELEVISION NETWORKS, LLC, ("A&E"), a Delaware corporation, and ROES

22  1-10, inclusive, for damages and other relief as follows:

23                            **THE PARTIES**

24         1.    Plaintiff JOHN DOE is an individual residing in the state of California,

25  and within the judicial district of this court.

26         2.    Plaintiff is informed and believes, and thereon alleges that Defendant

27  GPI is a corporation, organized and existing under the laws of the state of Illinois,

28  with its principal place of business in the state of Illinois.

3.     Plaintiff is informed and believes, and thereon alleges that Defendant A&E is a corporation, organized and existing under the laws of the state of Delaware, with its principal place of business in the state of New York.

4.     Plaintiff is further informed and believes, and thereon alleges that Defendants GPI and A&E do business in the county of Los Angeles, state of California, as a television production company and television network, respectively, whereby they produce, distribute, and display media content throughout the United States and abroad.

5.     Plaintiff is further informed and believes, and thereon alleges that "History," formerly known as "The History Channel," is a satellite and cable television channel owned by A&E which broadcasts television and media programming within the United States and abroad.

6.     Plaintiff is further informed and believes, and thereon alleges that one of the programs GPI produces, and A&E produces, distributes, and displays on, among other channels, "History," is *Gangland*.

7.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as ROES 1 through 10, inclusive, are unknown to JOHN DOE at the present time, and therefore JOHN DOE sues said Defendants by such fictitious names. JOHN DOE, after obtaining leave of court, if necessary, will amend this complaint to show such true names and capacities, and any additional factual allegations, when the same have been ascertained.

8.     JOHN DOE alleges, on information and belief, that Defendants and each of them, designated herein as ROES 1 through 10, inclusive, are responsible in some manner for the occurrences and happenings as herein alleged, and that JOHN DOE's damages, as herein alleged, were and are the direct and proximate result of actions of said Defendants, and each of them.  Said Defendants are sued individually, and in their capacities as agents, owners, managers, successors in interest, alter egos, servants, and employees of A&E, each other, or any

2

COMPLAINT; DEMAND FOR JURY TRIAL

1  combination thereof.

2      9.      JOHN DOE alleges, on information and belief, that at all times

3  mentioned herein, each of the Defendants was the principal, agent, owner,

4  manager, successor in interest, alter ego, and/or owner of each of the remaining

5  Defendants, and was acting within the scope and authority of such capacity, and

6  with the knowledge, consent, approval, and ratification of the remaining

7  Defendants, and each of them, with no separateness or distinction.

8      10.     JOHN DOE files this complaint pseudonymously because of the actual

9  threats he has received upon his life, as will be set forth more fully below. *Does I*

10  *thru XXIII v. Advanced Textile*, 214 F.3d 1058, 1068 (9th Cir. 2000) (allowing the

11  use of a pseudonym to conceal a party's identity when necessary to protect that

12  party from injury).  Upon the entry of a protective order, JOHN DOE will reveal

13  his identity to the court, as well as to the defendants and their counsel.

14                          **JURISDICTION AND VENUE**

15      11.     The court has jurisdiction in the original action under the court's general

16  diversity of citizenship jurisdiction, 28 U.S.C. Section 1332(a)(2), on the ground

17  that the amount of JOHN DOE's claims exceed the sum or value of $75,000.00,

18  exclusive of interest and costs, and is between citizens of different states.

19      12.     Venue is proper in this judicial district, pursuant to 28 U.S.C. Section

20  139(a) on the grounds that the claims have been brought in the judicial district

21  where a substantial part of the events or omissions giving rise to the claim

22  occurred.

23                          **GENERAL ALLEGATIONS**

24      13.     JOHN DOE is a former prison gang member and has intimate and

25  personal knowledge regarding several high profile gangs in the southern California

26  area.

27      14.     It was precisely because of this personal knowledge and experience that

28  for several years following his release from prison, JOHN DOE worked with local,

3

COMPLAINT; DEMAND FOR JURY TRIAL

1    state, and federal law enforcement officials, assisting in the arrest and conviction

2    of many gang members. JOHN DOE was paid for his services and was very

3    careful to conceal this relationship with law enforcement, as well as the nature of

4    his dealings on their behalf. Indeed, if any current or former gang members knew

5    of his activities assisting law enforcement, both his life, as well as the lives of his

6    loved ones, would be in great danger of physical bodily harm or even death. In

7    addition, his ability to continue working in this capacity was contingent upon his

8    identity remaining concealed.

9        15.    JOHN DOE took great care to protect his identity while working with

10   law enforcement officers, and would often testify solely by audio tape, so as not to

11   reveal his likeness in public. JOHN DOE's work assisting law enforcement was

12   his primary source of income.

13       16.    In late 2009, JOHN DOE witnessed a police officer with whom he had a

14   working relationship (as described above) being interviewed on camera while

15   pulling over a vehicle. After the interview, the officer introduced JOHN DOE to

16   the female interviewer (the identity of whom is currently unknown to JOHN DOE)

17   and suggested that the female interviewer may want to speak to JOHN DOE about

18   a piece she was doing on a former gang member who was working as a police

19   informant, but was subsequently murdered upon the discovery of his role as a

20   police informant.

21       17.    The female interviewer contacted JOHN DOE a couple of days later and

22   arranged to meet him at a local southern California motel for the interview. She

23   also agreed to pay him for the interview. The name of the female interviewer is

24   currently unknown to JOHN DOE, but JOHN DOE will amend his complaint once

25   the identity of the female interviewer has been ascertained.

26       18.    JOHN DOE, who was accompanied by his girlfriend, met the female

27   interviewer, who was accompanied by a cameraman, in a local southern California

28   motel room. The room was darkened, except for television camera lights.

COMPLAINT; DEMAND FOR JURY TRIAL

19.    Prior to the on-camera interview, JOHN DOE told the female interviewer that because of his former prison gang affiliation, as well as the nature of his undercover work with law enforcement, that his name and identity had to be concealed.  JOHN DOE told the female interviewer that his life would be in danger if his identity was to be shown.  In fact, JOHN DOE was wearing a hat and a bandana pulled over his face when he arrived to do the interview.  The female interviewer represented to JOHN DOE that his identity would be concealed, and that he did not need to wear anything over his face.  Since one of the subjects of the interview was about a former gang member turned police informant who was murdered when his identity was discovered by his former gang, the female interviewer knew how crucial it was that JOHN DOE's name and likeness be concealed when the interview was incorporated into the episode of *Gangland* and broadcast on "History."

20.    JOHN DOE was paid approximately $300.00 in cash for the interview.  The female interviewer told JOHN DOE that she would notify him when the episode would air.  At the time of the interview, JOHN DOE did not know with which program his interview would be used.  The interviewer never notified JOHN DOE about when the episode would air.

21.    In 2010, JOHN DOE and his girlfriend were watching *Gangland* when an episode aired regarding gang activity in the southern California area.  JOHN DOE's interview was used on this episode.  Much to his shock and dismay, however, his identity was not concealed, as he was told it would be.  JOHN DOE's face was broadcast (without any effort to obscure, darken, or pixilate it), as was his gang-related nickname.  JOHN DOE is informed and believes, and thereon alleges that the *Gangland* episode disclosing his identity and likeness has had repeated broadcasts on either "History" or "Spike."

22.    Following the broadcast of JOHN DOE's identity and likeness on *Gangland*, JOHN DOE has not been employable as a police informant since his

5

COMPLAINT; DEMAND FOR JURY TRIAL

1  identity is now publicly known, thereby rendering the value of his services as a
2  police informant useless. In addition, JOHN DOE has been threatened by current
3  gang members who recognized him from the episode of *Gangland*. On two
4  separate occasions while shopping in local markets, JOHN DOE was confronted
5  by gang members who told him he was now on the "hit list," and that he should
6  "watch his back." Following those threats, JOHN DOE was assaulted at his own
7  apartment when two gang members came to his residence carrying firearms, broke
8  his window, and fired gunshots into the air. A sign stating "Die Rat" was hung on
9  his residence door on another occasion.

10      23.     JOHN DOE and his girlfriend were evicted from their apartment mere
11  days after the episode of *Gangland* originally aired, showing his identity and the
12  nature of his work. Since at the time of the eviction they were current on their rent,
13  JOHN DOE is informed and believed and thereon alleges that the eviction was a
14  result of the landlord and/or the other tenants viewing JOHN DOE on the episode
15  and not wanting any gang-related individuals residing in their apartment complex.

16      24.     JOHN DOE has suffered from depression and was even hospitalized for
17  an attempted suicide following the airing of the "Gangland" episode when his
18  identity was revealed.

19      25.     JOHN DOE's girlfriend's family has moved away from the southern
20  California area because they are fearful of being close to, or associated with, JOHN
21  DOE and his girlfriend.

22      26.     JOHN DOE and his girlfriend have been forced to relocate due to the
23  eviction, the subsequent assault at their residence, and living in a constant state of
24  fear. JOHN DOE and his girlfriend are currently in the process of trying to move
25  out of the area to escape any further dangerous repercussions as a result of JOHN
26  DOE's identity being revealed.

27  ///
28  ///

6

COMPLAINT; DEMAND FOR JURY TRIAL

### First Cause of Action

### (Appropriation of Likeness)

### (Against Defendants GPI, A&E, and ROES 1 though 10)

27.     Plaintiff JOHN DOE realleges and incorporates herein each and every allegation contained in paragraphs 1 though 26 above.

28.     Plaintiff agreed to be interviewed to discuss southern California gang activity, as well as the killing of a gang-affiliated police informant, because such information was newsworthy and of legitimate public concern. However, Plaintiff's identity, including his face and his gang-related nickname, were not topics of public concern. Plaintiff specifically instructed the unknown female interviewer not to disclose his identity, and the female interviewer promised that it would not be disclosed. The scope of JOHN DOE's consent to be broadcast was therefore specifically limited to the information given, and was not to include his likeness or identity. The female interviewer understood the scope of the consent given, and represented to JOHN DOE that his identity would be concealed. The very subject of JOHN DOE's interview included a discussion of the murder of a former gang member who had become a police informant. Therefore, the female interviewer knew the importance of concealing JOHN DOE's identity, as well as the ramifications for failing to do so.

29.     In using the footage of his interview without obscuring or concealing his face or gang-related nickname in any way, Defendants GPI, A&E, and ROES 1 through 10, by and through their agent, the unknown female interviewer, and each of them, used JOHN DOE's name and likeness without his permission, as that usage went beyond the limited scope of consent given by JOHN DOE.

30.     Defendants GPI, A&E, and ROES 1 through 10, and each of them, gained an advantage by using JOHN DOE's name and likeness, as JOHN DOE is informed and believes, and therefore alleges that the defendants were able to enhance the dramatic effect of the programming thereby attracting more

7

COMPLAINT; DEMAND FOR JURY TRIAL

viewership.

31.    JOHN DOE was harmed economically, physically, and emotionally as a result of this appropriation.  JOHN DOE has lost his ability to continue working with law enforcement agencies since he can no longer conceal his identity, such that his undercover prison gang work is of no use to law enforcement.  JOHN DOE has also been physically threatened, has had gang members at his door discharging firearms, and has had notes left on his residence door referring to him as a "rat."  He and his girlfriend have been evicted from their residence on more than one occasion, even though their rent has been paid on time.  JOHN DOE has suffered from severe depression and was even hospitalized after he attempted suicide.  JOHN DOE's girlfriend's family has moved away from the couple for fear of being near JOHN DOE in the event of any gang-related repercussions.

32.    Defendants GPI, A&E, and ROES 1 through 10's actions, by and through their agent, the unknown female interviewer who failed to conceal JOHN DOE's name and likeness as promised, were a substantial factor in causing JOHN DOE's harm.

33.    As a result of these actions, JOHN DOE has been injured in an amount to be determined at trial.

34.    As a result of these actions, JOHN DOE is entitled to recovery of attorney's fees pursuant to Civil Code § 3344(a).

35.    Defendants ratified the wrongful conduct of their employees and/or agents, including but not limited to the female interviewer who acted with fraud, oppression, and malice, as well as with the intent to injure Plaintiff and/or in conscious disregard of the harm their actions would cause to Plaintiff.  Plaintiff is therefore entitled to recover punitive and/or exemplary damages in an amount to be determined at trial.

///

///

8

COMPLAINT; DEMAND FOR JURY TRIAL

## Second Cause of Action

### (Public Disclosure of Private Information)

### (Against Defendants GPI, A&E, and ROES 1 though 10)

36.     Plaintiff JOHN DOE realleges and incorporates herein each and every allegation contained in paragraphs 1 though 34 above.

37.     Defendants GPI, A&E, and ROES 1 through 10, and each of them, publicized private information concerning Plaintiff JOHN DOE; namely, his identity and gang-related nickname.

38.     Plaintiff agreed to be interviewed to discuss southern California gang activity, as well as the killing of a gang-affiliated police informant, because such information was newsworthy and of legitimate public concern. However, Plaintiff's identity, including his face and his gang-related nickname, were not topics of public concern.  Plaintiff specifically instructed the unknown female interviewer not to disclose his identity, and the female interviewer promised that it would not be disclosed.  The scope of JOHN DOE's consent to be broadcast was therefore specifically limited to the information given, and was not to include his likeness or identity.  The female interviewer understood the scope of the consent given, and represented to JOHN DOE that his identity would be concealed.  The very subject of JOHN DOE's interview included a discussion of the murder of a former gang member who had become a police informant.  Therefore, the female interviewer knew the importance of concealing JOHN DOE's identity, as well as the ramifications for failing to do so.

39.     In using the footage of his interview without obscuring or concealing his face or gang-related nickname in any way, Defendants GPI, A&E, and ROES 1 through 10, by and through their agent, the unknown female interviewer, and each of them, publicly disclosed JOHN DOE's gang-related identity and likeness without his permission, as that usage went beyond the limited scope of consent given by JOHN DOE.

9

COMPLAINT; DEMAND FOR JURY TRIAL

40.   A reasonable person in Plaintiff's position as a former prison gang member and informant for law enforcement would consider this publicity highly offensive because it put his life, as well as the lives of his loved ones in danger, and because it caused him to lose any future chance of employment as a law enforcement informant.

41.   Defendants, by and through their agent, the unknown female interviewer, knew, or acted with reckless disregard of the fact that a reasonable person in Plaintiff's position as a former prison gang member and informant for law enforcement would consider the publicity of his likeness and gang-related identity highly offensive, dangerous, and economically damaging.

42.   While the subject matter of the interview was of legitimate public concern, the private information; namely Plaintiff's likeness and gang-related identity, was not of legitimate public concern, and did not need to be broadcast or conveyed in order for the information about which Plaintiff spoke to be understood by the viewing public.  Concealing, obscuring, or pixilating his likeness would not in any way have prevented the content from being disclosed.

43.   JOHN DOE was harmed economically, physically, and emotionally as a result of this disclosure.  JOHN DOE has lost his ability to continue working with law enforcement agencies since he can no longer conceal his identity, such that his undercover prison gang work is of no use to law enforcement.  JOHN DOE has also been physically threatened, has had gang members at his door discharging firearms, and has had notes left on his residence door referring to him as a "rat." He and his girlfriend have been evicted from their residence on more than one occasion, even though their rent has been paid on time.  JOHN DOE has suffered from severe depression and was even hospitalized after he attempted suicide. JOHN DOE's girlfriend's family has moved away from the couple for fear of being near JOHN DOE in the event of any gang-related repercussions.

44.   Defendants GPI, A&E, and ROES 1 through 10's actions, by and through

COMPLAINT; DEMAND FOR JURY TRIAL

1    their agent, the unknown female interviewer who failed to conceal JOHN DOE's
2    name and likeness as promised, were a substantial factor in causing JOHN DOE's
3    harm.

4        45.    As a result of these actions, JOHN DOE has been injured in an amount to
5    be determined at trial, including attorney's fees and costs.

6        46.    As a result of these actions, JOHN DOE is entitled to recovery of
7    attorney's fees pursuant to Civil Code § 3344(a).

8        47.    Defendants ratified the wrongful conduct of their employees and/or
9    agents, including but not limited to the female interviewer who acted with fraud,
10   oppression, and malice, as well as with the intent to injure Plaintiff and/or in
11   conscious disregard of the harm their actions would cause to Plaintiff.  Plaintiff is
12   therefore entitled to recover punitive and/or exemplary damages in an amount to be
13   determined at trial.

**Third Cause of Action**

**(Breach of Contract)**

**(Against Defendants GPI, A&E, and ROES 1 though 10)**

17       48.    Plaintiff JOHN DOE realleges and incorporates herein each and every
18   allegation contained in paragraphs 1 though 45 above.

19       49.    On or about September 2009, Plaintiff and Defendants GPI, A&E, and
20   ROES 1 through 10, and each of them, by and through their agent, the unknown
21   female interviewer referenced above, entered into an oral contract.  Plaintiff was to
22   be paid approximately $300 in exchange for an interview to be utilized and
23   broadcast in conjunction with the *Gangland* television show.  Plaintiff specifically
24   instructed the unknown female interviewer not to disclose his identity, and the
25   female interviewer promised that it would not be disclosed.  The scope of JOHN
26   DOE's consent to be broadcast was therefore specifically limited to the
27   information given, and was not to include his likeness or identity.  The female
28   interviewer understood the scope of the consent given, and represented to JOHN

11

COMPLAINT; DEMAND FOR JURY TRIAL

DOE that his identity would be concealed.  The very subject of JOHN DOE's interview included a discussion of the murder of a former gang member who had become a police informant.  Therefore, the female interviewer knew the importance of concealing JOHN DOE's identity, as well as the ramifications for breaching the agreement.

50.     Plaintiff fully performed under the contract by agreeing to be interviewed and by providing information regarding southern California gang activity, as well as the killing of a gang-affiliated police informant, as requested.

51.     In using the footage of his interview without obscuring or concealing his face or gang-related nickname in any way, Defendants GPI, A&E, and ROES 1 through 10, by and through their agent, the unknown female interviewer, and each of them, breached the contract.

52.     JOHN DOE was harmed economically, physically, and emotionally as a result of this breach.  JOHN DOE has lost his ability to continue working with law enforcement agencies since he can no longer conceal his identity, such that his undercover prison gang work is of no use to law enforcement.  JOHN DOE has also been physically threatened, has had gang members at his door discharging firearms, and has had notes left on his residence door referring to him as a "rat." He and his girlfriend have been evicted from their residence on more than one occasion, even though their rent has been paid on time.  JOHN DOE has suffered from severe depression and was even hospitalized after he attempted suicide. JOHN DOE's girlfriend's family has moved away from the couple for fear of being near JOHN DOE in the event of any gang-related repercussions.

53.     As a result of these actions, JOHN DOE has been injured in an amount to be determined at trial.  The scope and gravity of Plaintiff's injuries upon breach of the agreement by disclosing his likeness and gang-related identity were reasonably known to the defendants, by and through the agent, the female interviewer, such that they are liable for all consequential damages.

12

COMPLAINT; DEMAND FOR JURY TRIAL

## Fourth Cause of Action

## (False Promise)

## (Against Defendants GPI, A&E, and ROES 1 though 10)

54.     Plaintiff JOHN DOE realleges and incorporates herein each and every allegation contained in paragraphs 1 though 51 above.

55.     Plaintiff agreed to be interviewed to discuss southern California gang activity, as well as the killing of a gang-affiliated police informant, because such information was newsworthy and of legitimate public concern. However, Plaintiff's identity, including his face and his gang-related nickname, were not topics of public concern.  Plaintiff specifically instructed the unknown female interviewer not to disclose his identity, and the female interviewer promised that it would not be disclosed.  The scope of JOHN DOE's consent to be broadcast was therefore specifically limited to the information given, and was not to include his likeness or identity.  The female interviewer understood the scope of the consent given, and promised to JOHN DOE that his identity would be concealed.  The very subject of JOHN DOE's interview included a discussion of the murder of a former gang member who had become a police informant.  Therefore, the female interviewer knew the importance of concealing JOHN DOE's identity, as well as the ramifications for failing to do so.  This promise of concealing Plaintiff's identity was important to the transaction.

56.     Defendants GPI, A&E, and ROES 1 through 10, by and through their agent, the unknown female interviewer, and each of them did not intend to perform this promise of concealing Plaintiff's likeness and gang-related identity when the promise was made.

57.     Defendants GPI, A&E, and ROES 1 through 10, by and through their agent, the unknown female interviewer intended that Plaintiff rely on the promise of concealing Plaintiff's likeness and gang-related identity in order to have the interview go forward.

13

COMPLAINT; DEMAND FOR JURY TRIAL

58.  Plaintiff reasonably relied upon the promise by Defendants GPI, A&E, and ROES 1 through 10, by and through their agent, the unknown female interviewer that Plaintiff's likeness and gang-related identity would be concealed.

59.  In using the footage of his interview without obscuring or concealing his face or gang-related nickname in any way, Defendants GPI, A&E, and ROES 1 through 10, by and through their agent, the unknown female interviewer, and each of them, did not perform the promised act since such usage of Plaintiff's gang-related name and likeness without his permission went beyond the limited scope of consent given by JOHN DOE.

60.  JOHN DOE was harmed economically, physically, and emotionally as a result of this disclosure.  JOHN DOE has lost his ability to continue working with law enforcement agencies since he can no longer conceal his identity, such that his undercover prison gang work is of no use to law enforcement.  JOHN DOE has also been physically threatened, has had gang members at his door discharging firearms, and has had notes left on his residence door referring to him as a "rat." He and his girlfriend have been evicted from their residence on more than one occasion, even though their rent has been paid on time.  JOHN DOE has suffered from severe depression and was even hospitalized after he attempted suicide. JOHN DOE' girlfriend's family has moved away from the couple for fear of being near JOHN DOE in the event of any gang-related repercussions.

61.  Defendants GPI, A&E, and ROES 1 through 10's actions, by and through their agent, the unknown female interviewer who failed to conceal JOHN DOE's name and likeness as promised, were a substantial factor in causing JOHN DOE's harm.

62.  As a result of these actions, JOHN DOE has been injured in an amount to be determined at trial.

63.  Defendants ratified the wrongful conduct of their employees and/or agents, including but not limited to the female interviewer who acted with fraud,

14

COMPLAINT; DEMAND FOR JURY TRIAL

1   oppression, and malice, as well as with the intent to injure Plaintiff and/or in

2   conscious disregard of the harm their actions would cause to Plaintiff. Plaintiff is

3   therefore entitled to recover punitive and/or exemplary damages in an amount to be

4   determined at trial.

5                                **Fifth Cause of Action**

6                       **(Negligent Infliction of Emotional Distress)**

7                 **(Against Defendants GPI, A&E, and ROES 1 though 10)**

8        64.    Plaintiff JOHN DOE realleges and incorporates herein each and every

9   allegation contained in paragraphs 1 though 61 above.

10       65.    Plaintiff agreed to be interviewed to discuss southern California gang

11  activity, as well as the killing of a gang-affiliated police informant, because such

12  information was newsworthy and of legitimate public concern. However,

13  Plaintiff's identity, including his face and his gang-related nickname, were not

14  topics of public concern. Plaintiff specifically instructed the unknown female

15  interviewer not to disclose his identity, and the female interviewer promised that it

16  would not be disclosed. The scope of JOHN DOE's consent to be broadcast was

17  therefore specifically limited to the information given, and was not to include his

18  likeness or identity. The female interviewer understood the scope of the consent

19  given, and promised to JOHN DOE that his identity would be concealed. The very

20  subject of JOHN DOE's interview included a discussion of the murder of a former

21  gang member who had become a police informant. Therefore, the female

22  interviewer knew the importance of concealing JOHN DOE's identity, as well as

23  the ramifications for failing to do so.

24       66.    Defendants GPI, A&E, and ROES 1 through 10, by and through their

25  agent, the unknown female interviewer, and each of them undertook a duty to

26  Plaintiff to not reveal his likeness and gang-related identity when he had

27  specifically narrowed the scope of his consent to only include his information, and

28  not his likeness or identity.

67.    In using the footage of his interview without obscuring or concealing his face or gang-related nickname in any way, Defendants GPI, A&E, and ROES 1 through 10, by and through their agent, the unknown female interviewer, and each of them, breached that duty since such usage of Plaintiff's gang-related name and likeness without his permission went beyond the limited scope of consent given by JOHN DOE, thereby constituting negligence.

68.    In addition to economic harm, JOHN DOE suffered severe emotional distress as a result of this disclosure.  JOHN DOE has lost his ability to continue working with law enforcement agencies since he can no longer conceal his identity, such that his undercover prison gang work is of no use to law enforcement.  JOHN DOE has also been physically threatened, has had gang members at his door discharging firearms, and has had notes left on his residence door referring to him as a "rat."  He and his girlfriend have been evicted from their residence on more than one occasion, even though their rent has been paid on time. JOHN DOE has suffered from severe depression and was even hospitalized after he attempted suicide.  JOHN DOE's girlfriend's family has moved away from the couple for fear of being near JOHN DOE in the event of any gang-related repercussions.

69.    Defendants GPI, A&E, and ROES 1 through 10's actions, by and through their agent, the unknown female interviewer who failed to conceal JOHN DOE's name and likeness as promised, were a substantial factor in causing JOHN DOE's harm.

70.    As a result of these actions, JOHN DOE has been injured in an amount to be determined at trial.

71.    Defendants ratified the wrongful conduct of their employees and/or agents, including but not limited to the female interviewer who acted with fraud, oppression, and malice, as well as with the intent to injure Plaintiff and/or in conscious disregard of the harm their actions would cause to Plaintiff.  Plaintiff is

16

COMPLAINT; DEMAND FOR JURY TRIAL

1  therefore entitled to recover punitive and/or exemplary damages in an amount to be

2  determined at trial.

3                          **Sixth Cause of Action**

4              **(Intentional Infliction of Emotional Distress)**

5       **(Against Defendants GPI, A&E, and ROES 1 though 10)**

6       72.    Plaintiff JOHN DOE realleges and incorporates herein each and every

7  allegation contained in paragraphs 1 though 69 above.

8       73.    Plaintiff agreed to be interviewed to discuss southern California gang

9  activity, as well as the killing of a gang-affiliated police informant, because such

10  information was newsworthy and of legitimate public concern. However,

11  Plaintiff's identity, including his face and his gang-related nickname, were not

12  topics of public concern.  Plaintiff specifically instructed the unknown female

13  interviewer not to disclose his identity, and the female interviewer promised that it

14  would not be disclosed.  The scope of JOHN DOE's consent to be broadcast was

15  therefore specifically limited to the information given, and was not to include his

16  likeness or identity.  The female interviewer understood the scope of the consent

17  given, and promised to JOHN DOE that his identity would be concealed.  The very

18  subject of JOHN DOE's interview included a discussion of the murder of a former

19  gang member who had become a police informant.  Therefore, the female

20  interviewer knew the importance of concealing JOHN DOE's identity, as well as

21  the ramifications for failing to do so.

22      74.    In using the footage of his interview without obscuring or concealing his

23  face or gang-related nickname in any way, Defendants GPI, A&E, and ROES 1

24  through 10, by and through their agent, the unknown female interviewer, and each

25  of them, acted outrageously since such usage of Plaintiff's gang-related name and

26  likeness was not necessary (since the information could have been conveyed by

27  obscuring Plaintiff's identity), and exposed Plaintiff to great danger.

28      75.    Defendants, by and through their agent, the unknown female interviewer,

COMPLAINT; DEMAND FOR JURY TRIAL

1    acted with reckless disregard of the fact that a reasonable person in Plaintiff's
2    position as a former prison gang member and informant for law enforcement
3    would suffer emotional distress knowing that Plaintiff would discover that his
4    likeness and gang-related identity were publicized, thereby exposing him to
5    economic, physical, and emotional damage.

6        76.    In addition to economic harm, JOHN DOE suffered severe emotional
7    distress as a result of this disclosure.  JOHN DOE has lost his ability to continue
8    working with law enforcement agencies since he can no longer conceal his
9    identity, such that his undercover prison gang work is of no use to law
10   enforcement.  JOHN DOE has also been physically threatened, has had gang
11   members at his door discharging firearms, and has had notes left on his residence
12   door referring to him as a "rat." He and his girlfriend have been evicted from their
13   residence on more than one occasion, even though their rent has been paid on time.
14   JOHN DOE has suffered from severe depression and was even hospitalized after
15   he attempted suicide.  JOHN DOE' girlfriend's family has moved away from the
16   couple for fear of being near JOHN DOE in the event of any gang-related
17   repercussions.

18       77.    Defendants GPI, A&E, and ROES 1 through 10's actions, by and through
19   their agent, the unknown female interviewer who failed to conceal JOHN DOE's
20   name and likeness as promised, were a substantial factor in causing JOHN DOE's
21   harm.

22       78.    As a result of these actions, JOHN DOE has been injured in an amount to
23   be determined at trial.

24       79.    Defendants ratified the wrongful conduct of their employees and/or
25   agents, including but not limited to the female interviewer who acted with fraud,
26   oppression, and malice, as well as with the intent to injure Plaintiff and/or in
27   conscious disregard of the harm their actions would cause to Plaintiff.  Plaintiff is
28   therefore entitled to recover punitive and/or exemplary damages in an amount to be

COMPLAINT; DEMAND FOR JURY TRIAL

1  determined at trial.

2      WHEREFORE Plaintiff JOHN DOE prays for relief as follows:

3     1. For damages in favor of JOHN DOE in an amount to be determined at trial.

4     2. For punitive and/or exemplary damages in an amount sufficient to punish

5  defendants and/or to make an example of the defendants for acting intentionally

6  and/or with conscious disregard of Plaintiff's rights.

7     3. For reasonable attorney's fees and costs.

8     4. For such other relief as the court may deem proper.

9

10  Dated: March 8, 2011                SCHIFFER & BUUS, APC

11

12                        By: _____

13                              Eric M. Schiffer

14                              William L. Buus

15                 Attorneys for Plaintiff JOHN DOE

16

17

18

19

20

21

22

23

24

25

26

27

28

19

COMPLAINT; DEMAND FOR JURY TRIAL

1

## **JURY DEMAND**

2      Plaintiff JOHN DOE hereby demands trial by jury.

3   Dated: March 8, 2011                    SCHIFFER & BUUS, APC

4

5                                           By: _____

6                                               Eric M. Schiffer

7                                               William L. Buus
                                                Attorneys for Plaintiff JOHN DOE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT; DEMAND FOR JURY TRIAL

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV11- 389 AG (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Eric M. Schiffer (SBN 179695)
SCHIFFER & BUUS, APC
4675 MacArthur Court, Suite 590
Newport Beach, CA 92660
Tel: 949-825-6140
Fax: 949-825-6141

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| JOHN DOE | CASE NUMBER |
|---|---|
| PLAINTIFF(S)<br>v.<br><br>GANGLAND PRODUCTIONS, INC., an Illinois Corporation; A&E TELEVISION NETWORKS, LLC, a Delaware Corporation; and ROES 1-10<br>DEFENDANT(S). | SACV11-00389 AG (MLGx)<br><br>**SUMMONS** |

TO:   DEFENDANT(S): _____
_____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Eric M. Schiffer_____, whose address is _4675 MacArthur Court, Suite 590, Newport Beach, CA 92660_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

MAR - 9 2011

Dated: _____

By: _____
        Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)<br>JOHN DOE | **DEFENDANTS**<br>GANGLAND PRODUCTIONS, INC., an Illinois Corporation; A&E TELEVISION NETWORKS, LLC, a Delaware Corporation; and ROES 1-10 |
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br>SCHIFFER & BUUS, APC<br>4675 MacArthur Court, Suite 590<br>Newport Beach, CA 92660          (949) 825-6140 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ MONEY DEMANDED IN COMPLAINT: $ To be determined at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☒ 360 Other Personal Injury | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

SACV11-00389

FOR OFFICE USE ONLY:   Case Number

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Illinois<br>New York |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date  3/9/11

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C (g)) |