```
 1
 2
 3
 4
 5
 6
 7
```

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOHN DOE,** | CASE NO. SACV 11-00389 AG (MLGx) |
| Plaintiff, | **ORDER DENYING MOTION TO STRIKE** |
| v. | |
| **GANGLAND PRODUCTIONS, INC.,** et al., | |
| Defendants. | |

The oath of silence among members of criminal gangs has long captivated television and movie producers. Fictional depictions of organized crime often emphasize maxims like "Never rat on your friends and always keep your mouth shut." GOODFELLAS (Warner Bros. Pictures 1990). But in this case, fiction becomes reality and the threat to Plaintiff's life is not for dramatic effect.

Plaintiff knew that speaking on tape to representatives of Defendants Gangland Productions, Inc. and A&E Television Network, LLC (collectively, "Defendants") about his previous gang, the Nazi Low Riders, risked his personal safety. In fact, part of the interview

explicitly discussed a former gang member who was murdered after it was revealed that he had spoken to the media in a taped interview. Plaintiff alleges that he relied on Defendants' alleged promise not to reveal Plaintiff's identity when the episode was broadcast. But Plaintiff signed a Program Participation and Release Agreement (the "Release") which stated that Defendants had the right to broadcast Plaintiff's identity. Plaintiff alleges that the interviewer misled him to believe that the Release was just a receipt for the $300 Defendants paid him. Plaintiff alleges that he never would have done the interview if his identity was going to be revealed. When the episode was finally broadcast, Plaintiff was shocked to discover that his identity was not concealed.

Plaintiff sued Defendants for disclosing his identity in the episode. Defendants now file a Motion to Strike ("Motion") Plaintiff's First Amended Complaint ("FAC") under California's statute addressing Strategic Lawsuits Against Public Participation ("Anti-SLAPP Statute"), California Code of Civil Procedure § 425.16. This Court must now determine whether Defendants' revelation of Plaintiff's identity is anti-SLAPP protected activity. After reviewing all arguments and papers submitted, the Court DENIES the Motion.

**BACKGROUND**

Plaintiff is a former prison gang member who agreed to provide a taped interview for an episode of *Gangland* (the "Program"). (FAC ¶¶ 13, 19.) The Program was a documentary television show that explored a gang with a white-supremacist reputation similar to Plaintiff's former gang. (Motion at 1:6-8.) Among other topics, the interview discussed the facts surrounding the murder of a former gang member named Scott Miller ("Miller"). (Opposition to Motion ("Opp'n") at 2:15-21; FAC ¶ 19.) Plaintiff specifically discussed the theory that Miller was killed by his own gang because he gave an interview about the gang. (*Id.*)

Plaintiff's interview occurred in a motel room in southern California. (FAC ¶ 18.) Defendants used clips from Plaintiff's interview in the Program. (*Id.* ¶ 22.) In those televised clips, Plaintiff's face and gang nickname were identified. (*Id.*) Plaintiff alleges that he only

1  agreed to be interviewed if Defendants promised to conceal his identity.  (*Id.* ¶ 19.)  Plaintiff
2  feared that disclosing his identity would endanger his life and eliminate his ability to be used as
3  a police informant.  (*Id.* ¶ 14.)  Plaintiff alleges that the woman who interviewed him for the
4  Program assured him that his identity would be concealed.  (*Id.* ¶ 19.)  Plaintiff alleges that
5  Defendants lied to him and broke their promise to conceal his identity.  (*Id.* ¶ 22.)  Plaintiff
6  alleges that Defendants' disclosure of his identity led to numerous death threats and the loss of
7  his primary source of income.  (*Id.* ¶ 23.)
8        Defendants argue that before taping the interview, Plaintiff signed the Release.  (Motion
9  at 1:8-9.)  Defendants argue that in signing the Release, Plaintiff "expressly consented to the
10 unrestricted use of his name and identity" and "waived his right to bring any claims based on
11 such use."  (*Id.* at 1:8-13.)  Plaintiff argues that he is illiterate and dyslexic.  (Opp'n at 3:17.)
12 Plaintiff alleges that he did not have his girlfriend, who accompanied him to the interview, read
13 the Release aloud to him because the female interviewer assured him that the Release was
14 "simply a receipt" for the $300 Plaintiff was paid for the interview.  (FAC ¶ 20.)
15       In May 2011, Plaintiff filed a first amended complaint with six claims numbered as
16 follows: (1) appropriation of likeness; (2) public disclosure of private information; (3) false
17 promise; (4) negligent infliction of emotional distress; (5) intentional infliction of emotional
18 distress; and (6) declaratory relief.  Defendants now move this Court to strike Plaintiff's FAC
19 under the Anti-SLAPP Statute.
20
21 **PRELIMINARY MATTERS**
22
23       The parties submitted numerous evidentiary objections.  The Court has reviewed the
24 objections filed here and relies only on admissible evidence.  *See F.T.C. v. Neovi, Inc.*, 598 F.
25 Supp. 2d 1104, 1118 n.5 (S.D. Cal. 2008) ("The parties have each filed evidentiary objections.
26 However, in deciding the present motions, the Court has only relied upon admissible
27 evidence."); *Schroeder v. San Diego Unified School Dist.*, No. 07cv1266-IEG (RBB), 2009 WL
28 1357414, at *2, n.1 (S.D. Cal. May 13, 2009).  *See also*, *Doe v. Starbucks, Inc.*, No. SACV 08-

0582 AG (CWx), 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).

**LEGAL STANDARD**

The Anti-SLAPP Statute was designed to prevent certain abusive lawsuits. The California legislature found "that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Code Civ. Proc. § 425.16(a). To address this issue, the Legislature enacted the Anti-SLAPP Statute, which provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. Proc. § 425.16(b)(1). The Legislature also said that the Anti-SLAPP Statute "shall be construed broadly." Cal. Code Civ. Proc. § 425.16(a).

California's Anti-SLAPP Statute applies in federal court. *Dealertrack, Inc. v. Huber,* 460 F. Supp. 2d 1177, 1180 (C.D. Cal. 2006) (citing *United States v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999)); *see also Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206 (9th Cir. 2005) (affirming the Ninth Circuit's holding in *Lockheed Missiles* that "California anti-SLAPP motions to strike and entitlement to fees and costs are available to litigants proceeding in federal court.").

The Anti-SLAPP Statute analysis involves two steps with shifting burdens. "A defendant filing an anti-SLAPP motion to strike 'must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of defendant's right of petition or free speech.'" *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005) (citations omitted). As used

in the Anti-SLAPP Statute, an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Section 425.16(e).

It need not be shown that the suit was brought with the intention to chill the defendant's speech. A plaintiff's intentions are "ultimately beside the point." *Bosley*, 403 F.3d at 682 (citing *Equilon Enterprises, LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002)).

After the prima facie showing is made, the burden then shifts to the plaintiff to prove "that there is a probability that the plaintiff will prevail on the claim." § 425.16(b)(1). To do this, the plaintiff "must demonstrate that the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d. 1090, 1098 (C.D. Cal. 2004) (quotations, emphasis, and citations omitted). "The court also considers the defendant's opposing evidence, but only to determine if it defeats the plaintiff's showing as a matter of law." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 906 (2002).

The burden a plaintiff faces is "much like that used in determining a motion for nonsuit, directed verdict, or summary judgment." *New.Net*, 356 F. Supp. 2d at 1099 (quotations and citations omitted). "Thus, a defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or when no evidence of sufficient substantiality exists to support a judgment for the plaintiff." *Id.* (quotations and citations omitted).

5

**ANALYSIS**

**1.      PRIMA FACIE SHOWING BY DEFENDANTS**

The threshold issue is whether the speech at issue here was made in furtherance of Defendants' rights of petition or free speech.  Under the Anti-SLAPP Statute, there are four categories of such acts as previously set forth.

Defendants argue that the fourth category of § 425.16(e) applies, which states that "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" falls within the Anti-SLAPP Statute.  Defendants argue that the Program's subject  – "southern California gang activity, as well as the killing of a gang-affiliated police informant" – is "in connection with . . . an issue of public interest."  (Motion at 11:5-7.)  Defendants argue that the creation of the Program is an exercise of free speech.  (*Id.* at 11:1-3 n.7.)  Defendants also argue that the disclosure of Plaintiff's identity is "in furtherance of" Defendants' right of free speech.  (Reply to Opp'n ("Reply") at 5:6-8.)  Further, Defendants classify Plaintiff's claims as "complaining about *the content of the Program*."  (*Id.* (emphasis in original).)

Plaintiff argues that the proper description of the Anti-SLAPP Statute's first prong is whether the "principal thrust" of Plaintiff's claims arise from protected speech.  (Opp'n at 6:10-12.)  Plaintiff argues that the "principal thrust" of his claim is that Defendants should have kept their promise and not disclosed Plaintiff's identity in the Program.  (*Id.* at 6:21-22.)  Plaintiff concedes that Defendants' broadcast of the Program discussing gang-related activity is "in connection with a public issue or an issue of public interest," but argues that the disclosure of Plaintiff's identity is not.  (*Id*. at 6:23-27.)  Plaintiff further argues that had Defendants broadcast the Program with Plaintiff's identity concealed, as Defendants did for two other interviewees in that episode, the protected content of the Program would not have been affected.  (*Id*. at 6:27-7:4.)

The Court now turns to the elements in the first prong of the Anti-SLAPP Statute.

### 1.1 In Furtherance of the Exercise of Free Speech

For the fourth category of the Anti-SLAPP Statute to apply, Defendants' disclosure of Plaintiff's identity must be "*in furtherance of the exercise of* [Defendants'] . . . constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(4) (emphasis added). It is uncontested that Defendants' broadcast of the Program includes activity covered by § 425.16(e)(4). (Opp'n at 6:18-20.) The crucial question is whether the "principal thrust" of Plaintiff's claims arise from such activity. *Robles v. Chalilpoyil*, 181 Cal. App. 4th 566, 575 (2010). "[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." *In re Episcopal Church Cases*, 45 Cal. 4th 467, 477 (2009) (citing *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002)) (emphasis in original). As the Supreme Court of California emphasized, "[t]he additional fact that protected activity may lurk in the background – and may explain why the rift between the parties arose in the first place – does not transform a [non-protected] dispute into a SLAPP suit." *In re Episcopal Church Cases,* 45 Cal. 4th at 478.

Here, the core of Plaintiff's claims is whether any statements by Defendants create a duty not to disclose Plaintiff's identity and whether the Release affects any such duty. Many of the allegations in Plaintiff's claims revolve around the conversation that Plaintiff had with the interviewer before the interview began and Plaintiff's understanding of the Release when he signed it. The FAC states that "Plaintiff specifically instructed the unknown female interviewer not to disclose his identity, and the female interviewer promised that it would not be disclosed." (FAC ¶ 30.) Plaintiff also alleges that the female interviewer "understood the scope of the consent given" and knew that publicly disclosing Plaintiff's gang nickname and likeness went beyond Plaintiff's scope of consent. (*Id.* ¶¶ 30, 40.)

1    Such allegations also raise another important issue – whether Defendants waived any
2 First Amendment rights to publicly disclose Plaintiff's identity. *See ITT Telecom Products*
3 *Corp. v. Dooley*, 214 Cal. App. 3d 307, 319 (1989). If Defendants waived their right to disclose
4 Plaintiff's identity, then the public broadcast of Plaintiff's face and gang nickname may not have
5 been a permissible exercise of free speech to be protected by the Anti-SLAPP Statute. This may
6 be the case even if disclosing Plaintiff's identity would have been protected activity absent
7 Defendants' waiver. But there's no need now to decide whether Defendants waived certain
8 aspects of their free speech rights. Indeed, it is too early in this case to decide such a significant
9 issue and the Court has concerns about using the Anti-SLAPP Statute to gain rulings based on an
10 undeveloped factual record.

11   Plaintiff does not contest that he agreed to allow his answers to the interviewer's
12 questions about gang activity and the killing of a gang-affiliated police informant to be
13 broadcast. He disputes whether he consented to Defendants broadcasting his answers without
14 obscuring his face and altering his voice. Defendants argue that their decision to identify
15 Plaintiff on the Program is part of "setting up the circumstances under which Plaintiff would be
16 filmed [that] . . . furthered the Program's broadcast." (Reply at 5:19-21.) This argument fails.
17 Unlike in *Lieberman v. KCOP Television, Inc.*, a case relied on by Defendants, Plaintiff's claims
18 here don't attack the news-gathering activities of Defendants. 110 Cal. App. 4th 156 (2003).
19 Although the facts surrounding Plaintiff's discussion with the interviewer are relevant to
20 assessing Plaintiff's claims, the core of Plaintiff's complaint attacks Defendants' broadcast of
21 the Program without concealing his identity.

22   Admittedly, Defendants' broadcast television show about gang violence, which is
23 generally protected activity, lurks in the background of Plaintiff's claims. But background
24 activities are just that: background. They define neither the "principal thrust" of a film nor a
25 claim for relief. Defendants read § 425.16 without limits and argue that a broad reading requires
26 that "any communicative activity seems to suffice." (Quotations omitted) (Motion at 9:15-18.)
27 Such a broad interpretation of the Anti-SLAPP Statute is contrary to the California legislature's
28

intent and props open floodgates that would drown the courts in the waters of anti-SLAPP litigation. *See Dealertrack*, 460 F. Supp. 2d at 1177.

The Anti-SLAPP Statute was enacted "to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1055-56 (2006) (citing *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*, 37 Cal. App. 4th 855, 865 (1995).) "The hallmark of a SLAPP suit is that it lacks merit, and is brought with the goals of obtaining an economic advantage over a citizen party by increasing the cost of litigation to the point that the citizen party's case will be weakened or abandoned, and of deterring future litigation." *Lockheed Missiles*, 190 F.3d at 970-71 (citing *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 816 (1994).) Discussion of the "goals" of a SLAPP suit is hard to square with the rule that plaintiff's intentions are "ultimately beside the point." *Compare id. with Bosley*, 403 F.3d at 682. But while intent may not be part of the analysis here, it bears stating that chilling rights or obtaining an improper economic advantage do not appear to be among Plaintiff's goals, particularly since the Program has already been broadcast.

The phrase "in furtherance of the exercise of" defines the requisite relationship between the protected activity and the claim. As the California legislature recognized when it enacted § 425.17 to respond to and limit what it saw as the excessive application of § 425.16, the Anti-SLAPP Statute must have limits. If the Court were to follow Defendants' argument to its logical conclusion, every suit for copyright infringement or breach of contract involving a film or television show would be subject to the Anti-SLAPP Statute. *See Duncan v. Cohen*, No. C 08-2243 BZ, 2008 WL 2891065, at *3 (N.D. Cal. July 22, 2008) (emphasizing the limits of § 425.16 in television and movie contexts). Such an expansive reading was surely not intended. Indeed, the California legislature declared in the plain language of § 425.17 that "there has been a disturbing abuse of Section 425.16." It enacted § 425.17 to limit the application of § 425.16 and rein in parties exploiting § 425.16 to seek early dismissal of certain lawsuits.

Fundamentally, Plaintiff's claims are based on the misaligned intentions and expectations of the parties. Lest the courts be washed away in a rising tide of anti-SLAPP suits, the Court should diligently apply the first prong of § 425.16 to ensure that movants show the requisite

9

connection between the non-movants' claims and the movants' anti-SLAPP protected activity. Otherwise, anti-SLAPP motions morph into automatic early motions for summary judgment that test the non-movants' claims absent the procedural protections that are necessarily and properly part of every summary judgment motion.

**1.2      In Connection with a Public Issue or an Issue of Public Interest**

Although Defendants failed to show that revealing Plaintiff's identity was "in furtherance of" Defendants' exercise of free speech, the Court still looks at the second element of the Anti-SLAPP Statute's first prong. Defendants must show that including Plaintiff's identity in the Program was "in connection with a public issue or an issue of public interest." § 425.16(e)(4). "The California intermediate appellate courts have developed multiple tests to determine whether a defendant's activity is in connection with a public issue." *Hilton v. Hallmark Cards*, 599 F.3d 894, 906 (9th Cir. 2010). In *Rivero v. American Federation of State, County, and Municipal Employees*, *AFL-CIO*, a California intermediate appellate court surveyed the appellate cases and formulated three categories of public issues: (1) statements "concern[ing] a person or entity in the public eye"; (2) "conduct that could directly affect a large number of people beyond the direct participants"; (3) "or a topic of widespread, public interest." 105 Cal. App. 4th 913, 924 (2003). *See also Commonwealth Energy Corp. v. Investor Data Exchange,* 110 Cal. App. 4th 26, 33 (2003) (describing *Rivero* as the first systematic treatment of the "public issue-public interest aspect" of the Anti-SLAPP Statute).

Defendants' disclosure of Plaintiff's identity in the Program does not fall into any of the three categories of public issues identified in *Rivero*. First, Plaintiff is not a person or entity in the public eye. (Opp'n at 12:20-21.) Some reenforcement for this conclusion comes from Plaintiff's suit, which appears to be largely motivated by Plaintiff's desire to avoid the public eye. (*Id.* at 3:11-13.) Second, the disclosure of Plaintiff's identity is unlikely to directly affect a large number of people outside the direct participants. Third, although the Program's general topics of gang violence and Miller's murder are topics of widespread public interest, Plaintiff's

identity is not. Unlike in *M.G. v. Time Warner, Inc.*, the risk of identifying Plaintiff was obvious to all the parties involved. 89 Cal. App. 4th 623 (2001). Plaintiff's identity was revealed in the Program, despite the fact that a large portion of the interview discussed the risk that former gang member interviewees face when their identities are revealed. As the Program's narrator acknowledges throughout the episode, "[the gang] has only one rule: you talk, you die." (Decl. Of Douglas S. Kneissl, Ex. D.)

The facts of this case are also distinguishable from *Tamkin v. CBS Broadcasting, Inc.*, a case relied on by Defendants. 193 Cal. App. 4th 133 (2011). The court in *Tamkin* emphasized that the use of the Plaintiffs' real names as placeholders for guest characters on a television show was part of the creative process underlying the production of the show that was of public interest. *Id*. at 144. The court in *Tamkin* also emphasized that the creative process that used the Plaintiffs' names, and not only broadcasting the television show, was of public interest. *Id.* Here, Defendants have not pressed any argument that the particular disclosure of Plaintiff's identity is of public interest.

In contrast to the *Rivero* test, in *Weinberg v. Feisel* another California intermediate appellate court developed a test to distinguish between issues of "public, rather than merely private, interest." 110 Cal. App. 4th 1122. Specifically, the court stated:

> First, "public interest" does not equate with mere curiosity. Second, a matter of public interest should be something of concern to a substantial number of people. Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. Third, there should be some degree of closeness between the challenged statements and the asserted public interest; the assertion of a broad and amorphous public interest is not sufficient. Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy. Finally, . . . [a] person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Hilton,* 599 F.3d at 906-07 (citing *Weinberg*, 110 Cal. App 4th at 1131-32).

Although the *Rivero* and *Weinberg* tests have some differences, the Court need not decide between them because Defendants' disclosure of Plaintiff's identity fails both tests. Defendants' disclosure of Plaintiff's identity does not meet the stricter test from *Weinberg*. First, even if the Program's viewers were curious about Plaintiff's identity, such curiosity does not deem Defendants' disclosure of public interest. Second, Plaintiff's identity is not of concern to a substantial number of people. Even if gang activity in southern California concerns a substantial number of people, Plaintiff's identity does not. Third, the challenged statement (disclosure of Plaintiff's identity) and Defendants' asserted public interest (gang violence) are not closely related. As Plaintiff argues, the absence of his identity from the Program would not have impacted the content or Defendants' ability to communicate their protected speech. (Opp'n at 6:27-7:4.) Fourth, the public's knowledge of Plaintiff's identity does not improve their general knowledge of gang-related activity. Whatever the Program's public interest message, Plaintiff's personal identity does not affect that message. Fifth, Defendants cannot turn otherwise private information into a matter of public interest by broadcasting the information to a large number of people. Thus, Defendants' revelation of Plaintiff's identity on the Program is not in connection with a public issue or an issue of public interest, even though Defendants correctly argue that the subject matter of their program is of public interest.

**1.3 Conclusion**

Defendants fail to show that revealing Plaintiff's gang nickname and face on the Program was "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." § 425.16(e)(4). Defendants have not met the burden of the first prong of the Anti-SLAPP Statute.

**2.  PROBABILITY OF PREVAILING BY PLAINTIFF**

Since Defendants fail the first prong, Defendants' Motion must be denied. *Hilton*, 599 F.3d at 902. The Court need not determine Plaintiff's probability of prevailing. But the Court looks forward to the prospects of reviewing the merits of this case in the context of summary judgment and the protections it provides.

**DISPOSITION**

The Motion is DENIED.

IT IS SO ORDERED.

DATED: August 1, 2011

_____
Andrew J. Guilford
United States District Judge